IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: | ) |
| | ) |
| GAGE'S LONG CREEK MARINA, INC., | )  Case No. 11-61319 |
| | ) |
| Debtor. | ) |

### MEMORANDUM ORDER DETERMINING THE
### VALIDITY AND PRIORITY OF INTERESTS IN CLAIM 10-1

On August 24, 2011, creditor Equity Resources, LLC filed a proof of claim ("Claim") in this case for $157,500. Three parties now claim an interest in that Claim: BBG Corporation, J. Neal Etheridge, and Todd Eads. BBG contends that on October 17, 2011, Equity pledged the note upon which Equity's Claim is based to secure $60,000 in advances BBG made to Equity. Etheridge contends that Equity transferred all of its rights in the Claim to Etheridge on January 10, 2012. And Eads claims that Equity transferred all of its rights in the Claim to him on March 23, 2012. Needless to say, Equity has been "busy."

On May 7, 2012, BBG objected to a Notice of Transfer of Claim filed by Etheridge and moved the Court to determine that BBG's interest in the Claim is superior to Etheridge's and Eads's. Etheridge and Eads, not surprisingly, claimed that they had superior interests in the Claim and asked that payments on the Claim be paid to them ahead of the other two combatants. Ultimately, the parties agreed to submit this matter to the Court on stipulated facts and simultaneous briefs. All of the briefs have been filed and the Court is ready to rule.

For the reasons explained below, the Court finds that BBG has a first priority interest in the Claim for the all of the amounts due under the BBG Note. Etheridge is entitled to the balance of any funds paid on the Claim. Todd Eads has no interest in the Claim.

### BACKGROUND

The Court's decision is based on the pleadings and Stipulation of Facts filed on November 16, 2012 and after due consideration of the arguments presented in the briefs. The Stipulation, reproduced below, has been edited only for clarity.

1.   Equity Resources, LLC is a Missouri limited liability company organized on March 26, 2010. Equity was set up to make loans, particularly loans to borrowers who didn't qualify for

traditional bank financing, and to purchase distressed properties. The owners of Equity are Kevin Hunter and BRR, LLC, which in turn is wholly owned by Bob Reasoner.

2.      Equity borrowed $97,500.00 from Anthony T. Eads on May 7, 2010, and $150,000 on May 26, 2010.[1]

3.      Prior to April 2011 Equity made multiple loans to the Debtor, Gage Family Entertainment, and the Gage Family (collectively, the "Gage Entities") for working capital.

4.      By April 2011 the Gage Entities were in default to Equity and other creditors, including Commerce Bank.

5.      In April 2011 Commerce Bank commenced foreclosure against the Debtor's real property.

6.      Equity and the Debtor agreed to enter into a wraparound note ("Gage Note") in the amount of $750,000 wherein all obligations of the Debtor and the Gage Entities would be wrapped together, and the Debtor and others would guarantee the debt for 90 days. The Gage Note was signed by the Debtor on April 19, 2011, and guaranteed by Justin Gage, James Gage, Maia Gage, Shelly Gage, Carolyn Gage and Gene Bicknell.

7.      Equity agreed to advance $150,000 to Debtor and Debtor agreed to transfer certain real and personal property to Equity based upon the Gage Note; the debt was otherwise unsecured.

8.      Unable to pay its creditors, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code on June 20, 2011.

9.      On August 24, 2011, Equity filed a claim (Claim No. 10) against the Debtor for $157,500. The Claim identified the basis of the claim as "Promissory Note," and the $750,000 Gage Note was attached as documentation for the claim.

10.     On October 17, 2011, Equity, as a borrower, entered into a $60,000 line of credit note ("BBG Note") with BBG Corporation. The BBG Note provided for interest after December 31, 2011, at 15% per annum and obligated Equity to pay all attorney fees and costs of collection.

11.     Pursuant to a "Pledge Agreement" executed by Equity and its principals and their spouses, the BBG Note was secured by the Gage Note. The Pledge Agreement noted that it

---

[1] The Stipulation states that Equity borrowed money from "Anthony T. Eads," but that it transferred the Claim to "Todd Eads." From a review of the pleadings, the Court surmises that "Todd" is the middle name of "Anthony T. Eads" and therefore presumes that these references are to the same person.

2

secured the BBG Note and "any and all extensions, modifications, substitutions, replacements, and renewals thereof."

12. Equity executed an allonge in favor of BBG which was attached to the original note, and BBG filed a UCC-1 and took possession of the Gage Note.

13. BBG has advanced in excess of $70,000 to Equity.

14. On January 10, 2012, Equity assigned to J. Neal Etheridge any and all monies owed or to become due to Equity from Gage's Long Creek Marina, Inc. The assignment was made to: 1) secure debts owed by BRR, LLC, to the Betty J. Etheridge Trust; 2) to keep the Betty J. Etheridge Trust from foreclosing on the house owned by BRR and occupied by Bob Reasoner; and 3) to provide for a letter of credit to purchase a boat dock. Etheridge was prepared to, and did in fact provide, a letter of credit to Equity. But the purchase of the boat dock did not take place and the letter of credit was never used.

15. On March 30, 2012, Todd Eads filed a "Notice of Transfer of Claim Other Than for Security" indicating that Claim 10 was transferred and assigned to Todd Eads. An assignment executed by Bob Reasoner on behalf of Equity dated March 23, 2012, was attached to the Notice of Transfer. The assignment assigned "all right [sic], title, and interests" to payment under the Claim. Eads agreed in the assignment to apply any proceeds to Equity's outstanding debts to Eads.

16. On March 26, 2012, the BBG Note was amended to increase it to $70,000, mainly for Equity's attorneys' fees. As of the date of the Stipulation, BBG was owed $73,776.64, including principal, interest and legal fees.

17. BBG commenced this "action" by requesting that the Court determine the relative priorities of BBG, Eads, and Etheridge in the funds to be disbursed by J. Kevin Checkett, the Plan Administrator under the Debtor's confirmed liquidating plan.

## DISCUSSION

### A.   The Parties' Arguments

BBG contends that its interest in the Claim is superior to Etheridge's and Eads's interests to the full extent of funds advanced to Equity under BBG's note because BBG properly perfected its interest in the Gage Note and the Pledge Agreement granted BBG a security interest in the Gage Note for any future obligations of Equity to BBG; therefore, the argument goes, any

subsequent assignment of the Claim (which is inextricably connected to the Gage Note) would be subject to BBG's full interest in the Gage Note.

Etheridge argues that his interest in the Claim is paramount because: 1) BBG's interest is derivative of the Gage Note, and the Claim is (supposedly) based solely on Equity's settlement of an adversary proceeding filed by the Debtor to avoid Equity's interest in a 149-passenger commercial yacht known as "Branson's American Star," 2) the assignment to Eads occurred after the assignment to Etheridge so there was nothing left for Equity to assign to Eads, and 3) even if BBG has a valid interest in the note, that interest is limited to $60,000 because the BBG Note does not contain a future advance clause.

Eads concedes that BBG is entitled to $60,000 pursuant to Equity's initial pledge of the Gage Note to BBG, but he disputes BBG's claim to the additional funds BBG advanced to Equity after it assigned the Claim to Eads. And he argues that Etheridge's assignment does not take precedence even though it was executed first because Etheridge gave no consideration for the assignment.

**B.     Findings of Fact and Conclusions of Law**

The resolution of the priority of interests in the Claim is relatively straightforward despite the convoluted facts.

As noted above, the Court finds that BBG's interest in the Claim and Gage Note for all sums due under the BBG Note is paramount. BBG properly perfected its interest in the Gage Note; neither Etheridge nor Eads has contested this fact. And, contrary to Etheridge's contention, BBG's interest in the claim is indeed based (at least in part) on the Gage Note: The proof of claim filed by Equity states on its face that the basis for the claim is "Promissory Note," *i.e.,* the $750,000 wraparound note executed by the Debtor, and nothing in the agreement settling Adversary No. 11-3030 states otherwise. The settlement agreement limits the amount of the claim to $150,000 "for moneys owed to Equity by Debtor . . . ."  Moreover, the purported transfer of the yacht took place in February 2011 and the Gage Note, executed on April 19, 2011, was intended to be a "wraparound note," encompassing all of the Debtor's outstanding obligations to Equity at that time, including those related to transfer of the yacht to Equity.

Etheridge's and Eads's arguments that BBG's interest is limited to the initial $60,000 advanced to Equity are also unavailing. Quite simply, the absence of a future advance clause in

4

the BBG Note is irrelevant to whether an intervening assignment cuts off BBG's interest in the Gage Note; the dispositive fact is whether the security instrument – *i.e.*, the Pledge Agreement – is broad enough to encompass future advances or, as is more accurate in this case, a modification of the note increasing the indebtedness thereunder.[2] The Pledge Agreement unambiguously does that. Paragraph 2 specifically provides: "This Pledge and Security Agreement shall secure all future advances, extensions, and obligations constituting the 'Obligations,'" and Obligations includes "any and all extensions, modifications, substitutions, replacements, and renewals [of the Gage Note]." Therefore, BBG's interest in the Gage Note includes the additional $10,000 advanced pursuant to the March 26, 2012 amendment of the BBG Note, plus interest on all amounts advanced, as well as BBG's attorney fees and costs incurred in its collection.

Having determined that BBG's interest in the Gage Note is paramount, the Court now turns to the priority contest between Etheridge and Eads.

Etheridge wins this contest. Equity's assignment to Etheridge of Equity's interest in the Claim was supported by consideration, contrary to Eads's contention, and once Equity assigned its interest to Etheridge, there was nothing left for it to assign to Eads. The fact that Equity decided not to draw on the letter of credit Etheridge provided did not affect the validity of the consideration served by the letter of credit for the assignment of the Claim. "[C]onsideration must be measured at the time the parties enter into their contract[,] and the diminished value of the economic benefit conferred, or even a complete lack of value, does not result in a failure of consideration."[3]

"Consideration sufficient to support a contract is composed of: (1) a detriment to one party, or, (2) a benefit to the other party."[4] "Valuable consideration may consist of some right, interest, profit or benefit accruing to one party, or some forbearance, loss or responsibility, given, suffered or undertaken by the other." "[C]onsideration consists either of a promise (to do or to

---

[2] *Cf.* Mo. Rev. Stat., § 443.055. Section 443.055 deals with security interests in real property, but the principles are the same. To protect its priority with regard to future advances, a secured party must include a future advance clause in the *security agreement* (mortgage, deed of trust, etc.). The statute says nothing about the need to include such a clause in the underlying *promissory note*.

[3] *Weinstein v. KLT Telecom, Inc.*, 225 S.W.3d 413, 415–16 (Mo. banc 2007).

[4] *Gordon A. Gundaker Real Estate Company, Inc. v. Missouri Real Estate Commission*, 878 S.W.2d 466, 470 (Mo. Ct. App. 1994).

5

refrain from doing something) or the transfer or giving up of something of value to the other party."[5] Even a small or "slight" consideration is sufficient to support a contract.[6]

Here, Etheridge made a commitment to fund a $2,000,000 letter of credit. And while it might be difficult to ascertain the value of that commitment to Equity because Equity never drew on that letter of credit, the detriment to Etheridge is undeniable – for some time, no matter how short, Etheridge had to be prepared to incur a $2,000,000 liability. That detriment was sufficient consideration to support the assignment of the Claim to Etheridge. Therefore, Equity's subsequent assignment of the Claim to Eads was essentially illusory, inasmuch as Equity no longer had any rights in the Claim to assign.

## CONCLUSION

For the reasons stated above, the priority of interests in Claim 10 is as follows: BBG Corporation is entitled to the current amounts due to it under the BBG Note, and J. Neal Etheridge is entitled to any funds distributed on Claim 10 above that amount. Todd Eads is not entitled to any distribution on Claim 10, although he might have independent, state-law claims against Equity, which claims would be beyond the purview of this action and the jurisdiction of this Court.

**SO ORDERED** this 11th day of December 2012.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed conventionally
or electronically to the counsel of record.

---

[5] *Marzette v. Anheuser-Busch, Inc.*, 371 S.W.3d 49, 52 (Mo. Ct. App. 2012) (emphasis added).
[6] *See Missouri Dept. of Transp., ex rel. PR Developers, Inc. v. Safeco*, 97 S.W.3d 21, 33 (Mo. Ct. App. 2002).